IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| MARK RAVENSHADOW WREN, TDCJ-CID # 927238, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. V-04-076 |
| GARY JOHNSON, et al., | § § | |
| Defendants. | § § | |

## **MEMORANDUM OPINION AND ORDER**

Mark Ravenshadow Wren, a prisoner of the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed a civil rights complaint under 42 U.S.C. § 1983 against TDCJ-CID officials. Wren claims that he practices a Native American religion and that officials have interfered with his efforts to observe his religious beliefs. For the most part, Wren's original complaint consisted of conclusory and vague allegations which failed to specify any violation of his rights under the Constitution or federal statutory law. Wren also sought to establish a class action and apparently solicited other inmates to join in the action. Due to the disorganized, and occasionally contradictory nature of his pleadings, the court denied Wren's motions for class certification and ordered him to answer specific questions about the alleged violations. The court also specifically ordered Wren not submit any more motions until the court had an opportunity to review his response to the court's Order for More Definite Statement. Docket Entry No. 26. Despite the Order, twenty-two motions were filed although most of them were nominally filed by other prisoners. The motions will be denied. The court has examined Wren's More Definite Statement and findings regarding the claims as explained below.

## I. Claims and Allegations

Liberally construed, Wren's pleadings point to claims under the First Amendment, the Fourteenth Amendment, and the Religious Land Use and Institutionalized Persons Act (RLUIPA) against the following officials: TDCJ Executive Director Gary Johnson, TDCJ-CID Director Douglas Dretke[1], Director of Chaplaincy Bill Pierce, TDCJ-CID Stevenson Unit Warden Brad Casal, Assistant Warden Gary Hunter, and Major C.E. Monroe. The violations are alleged to have occurred at the TDCJ-CID Stevenson Unit where Wren is assigned.

Wren claims that adherents of the Native American religion are denied the same services that are available to other faith groups. More Definite Statement, Docket Entry No. 26, Page 4. He complains that other religious groups have Bibles, tracts, religious newspapers, electronic devices (microphones, keyboards, etc.) while the Chaplaincy Department has refused his request to purchase "Sacred Tobacco" for use in prayer ceremonies. *Id.* at 6. The explanation given was that funds were donated; however, Wren has not been shown any documentation as to the funding's source. *Id.*

Wren alleges that he has been denied daily use of a medicine bag and other sacred items. *Id.* at 5. He admits that he is able to keep a prayer feather, sacred stones, a medicine bag, a headband, a rattle, and a small drum in his cell. *Id.* at 7. Nevertheless, he implies that he must keep in contact with the items to protect himself against evil spirits. *Id.*

Wren also states that he has been denied an opportunity to participate in a sweat lodge ceremony and a pipe ceremony. According to Wren, the two ceremonies are essential to practicing his faith. *Id.* Wren asserts that TDCJ-CID has never allowed the use of a sweat lodge on its

---

[1] Wren refers to Douglas Dretke as "Derkery" in his More Definite Statement. Docket Entry No. 38 at Page 1.

premises, but it has permitted Native American adherents to participate in a pipe ceremony. *Id*. However, officials have recently denied permission to hold a pipe ceremony because there were no free world volunteers to lead it. *Id.* Wren contends that sweat lodge ceremonies are often held on a daily basis although he concedes that a monthly ceremony or a ceremony before a pipe ceremony would be sufficient. *Id*. at 8.

Wren further complains that the grooming policy violates his rights because he has been forced to cut his hair in violation of his beliefs that his hair is a gift from the creator. *Id*. at 6. When asked how long his hair must be in order to comply with his beliefs, Wren's answer indicated that any requirement to cut his hair would interfere with his beliefs. *Id*. at 8.

In summary, Wren complains that he was denied daily use of a medicine bag, an opportunity to participate in a sweat lodge ceremony, an opportunity to participate in a pipe ceremony, and the right to wear long hair in observance of his Native American religion. He also complains that TDCJ-CID has not made the same resources available to adherents of the Native American religion.

## II. Analysis

A. Overview of Prisoners' Right to Practice Their Chosen Religion

Under the First and Fourteenth Amendments to the Constitution, prison inmates are entitled to reasonable opportunities to adhere to the tenets of their sincerely held religious beliefs. *Cruz v. Beto*, 92 S.Ct. 1079, 1081 n. 2 (1972). However, prison officials have a duty to operate secure institutions, and they are authorized to place restrictions which interfere with religious practices and activities if the restrictions are implemented in pursuit of legitimate and necessary penological goals. *Turner v. Safley*, 107 S.Ct. 2254, 2261-62 (1987); *O'Lone v. Estate of Shabazz*, 107 S.Ct.

3

2400, 2405 (1987); *Green v. Polunsky*, 229 F.3d 486, 489 (5th Cir. 2000). Moreover, there is no constitutional requirement that prison officials provide the same support, personnel, and resources to every religious sect regardless of size. *Green, citing Cruz*, at 1081 n. 2 (1972). In assessing a prisoner's challenges to a prison regulation or order which may interfere with his religious practices the court considers:

> (1) whether a "valid, rational connection [exists] between the prison regulation and the legitimate governmental interest put forward to justify it," (2) whether there exist "alternative means of exercising the fundamental right that remain open to prison inmates," (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and (4) whether there is an "absence of ready alternatives" to the regulation in question.

*Adkins v. Kaspar*, 393 F.3d 559, 564 (5th Cir. 2004), *citing Turner v. Safley*, 107 S.Ct. 2254, 2262 (1987).

C. Claims Subject to Dismissal - Equal Access, Grooming Standards, and Sacred Items

The court is not persuaded by Wren's allegations and arguments that TDCJ-CID has violated his rights by not offering the same materials and services to his Native American sect as those offered to other religions. Wren was told that the other religious items were donated and he presents no facts indicating otherwise. His vague suspicions cannot support a claim. *Jackson v. Widnall*, 99 F.3d 710, 715-16 (5th Cir. 1996) (conclusory allegations are insufficient to establish a constitutional violation).

TDCJ-CID has limited resources, and Wren's group is but one of numerous religious sects with specials needs, not all of which can be accommodated to everyone's satisfaction in every situation. *See Freeman v. Texas Dept. of Criminal Justice*, 369 F.3d 854, 859 (5th Cir. 2004). TDCJ-CID has explicitly banned the use of tobacco because exposing inmates involuntarily to

4

second-hand smoke is an unnecessary health risk and a violation of the Eighth Amendment. *See Helling v. McKinney*, 113 S.Ct. 2475, 2480-81 (1993). To require prison officials to purchase a prohibited substance would violate the prison's own court mandated policy. Regardless of whether there were funds available to purchase the sacred (and illicit) tobacco, TDCJ-CID would be justified in prohibiting Wren from possessing or using it. *See Brunskill v. Boyd*, 2005 WL 1208632 (11th Cir. May 10, 2005) (upholding denial of tobacco, sage, cedar, sweetgrass, and other religious materials to Native American prisoners). Wren fails to establish a claim regarding the alleged denial of sacred tobacco because TDCJ-CID cannot be made to fulfil every want of every sect regardless of size. *See Cruz*, 92 S.Ct. at 1081; *Adkins*, 393 F.3d at 565.

Wren's challenges to the prison's grooming standards are not actionable either. TDCJ-CID has a grooming policy for male inmates which restricts the length of their hair. *Diaz v. Collins*, 114 F.3d 69, 70 (5th Cir. 1997). The Fifth Circuit has upheld the constitutionality of the regulations despite the undisputed religious significance of long hair to followers of Native American beliefs. *Id.* at 72-73. In doing so, the Fifth Circuit recognized that the grooming code placed a burden on the adherents but that TDCJ-CID had compelling security interests in enforcing the grooming standard and that those interests could not be met without regulating the length of inmates' hair. *Id.* Therefore, Wren does not have a right to refuse to cut his hair. *See also Green*, 229 F.3d at 488; *Hamilton v. Schriro*, 74 F.3d 1545, 1551 (8th Cir. 1996).

Wren fails to establish a constitutional violation regarding the restrictions on where he can wear and use personal religious items. He admits that he is allowed to keep the items in his cell and has occasional access to them for ritual purposes. Such restrictions have been upheld by the courts. *Diaz*, at 72; *Muhammad v. Lynaugh*, 966 F.2d 901, 902-03 (5th Cir. 1992) (upholding prison

5

regulation prohibiting Muslim inmates from wearing Kufi caps and other religious insignia in dayrooms and other prison areas). While Wren retains a right to practice his religion, he is subject to those TDCJ-CID's rules which are necessary to maintain order. *Muhammad*, at 902. To allow inmates of various religious sects to carry religious items at any time throughout the prison units would be dangerous and a threat to security. *Id. See also Standing Deer v. Carlson*, 831 F.2d 1525, 1528 (9th Cir. 1987). Therefore, Wren's allegation regarding his access to his sacred articles fails to establish a claim because he is allowed to use them at certain appropriate times. *Muhammad*, at 903. Wren's claims regarding the right to equal access to resources, the right not to cut his hair, and the right to possess religious items at all times will be dismissed as frivolous because they have no basis in law. 28 U.S.C. § 1915(e); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998).

      C. <u>Claim Requiring Response - Ceremonies</u>

Wren complains that he has been denied the right to participate in a pipe ceremony and a sweat lodge ceremony. While the courts recognize the general importance of religious gatherings to followers, they have also recognized the prisons' authority and need to regulate such events. *See Adkins*, 393 F.3d at 564. TDCJ-CID does not overstep its authority by requiring that services, ceremonies or rituals be conducted by non prisoners and the system is not obligated to accommodate every requirement of the Native Americans regardless of the availability of personnel or other resources. *Id.* at 565-66. This court has some grave doubts about the feasibility of conducting a sweat lodge ceremony in a prison setting regardless of its significance to Wren and others who follow his beliefs. *See Hamilton*, 74 F.3d at 1548. At a sweat lodge ceremony participants meet undressed in a completely enclosed wigwam like structure where they use heated rocks to make steam in order to purify themselves. *Id*. The ceremony may last for several hours. *Id*. It is easily

6

understood that such a process would present legitimate security concerns due to risks of assault and other illicit activity. *Id.* at 1551.

If the court was certain that alternative means were made available to Wren, his claim would be subject to dismissal. *Id.* However, Wren alleges that TDCJ-CID has denied him access to both pipe and sweat lodge ceremonies. Further, Wren has presented grievances (*see* attachment to More Definite Statement, Docket Entry No. 38) which indicate that most services have been suspended. An isolated incident where one ceremony is canceled will not support a civil rights claim. *Boomer v. Irvin*, 963 F.Supp. 227, 231 (W.D.N.Y.1997). However, Wren has alleged that the opportunities to practice his religion have been substantially reduced without adequate explanation. *See Mumin v. Phelps*, 857 F.2d 1055, 1057 (5th Cir. 1988). Therefore, Wren's claim regarding the ceremonies will be retained and the defendants will be ordered to file a response in a separate Order.

### III. Motions for Joinder, Injunction and Permission to File Additional Motions

Shortly after the original complaint was filed, a handful of other inmates filed motions for joinder. The court, noting that motions were generally identical "fill in the blank" documents which may have been drafted by the plaintiff, denied them because they consisted of conclusory statements which did not demonstrate that they were indispensable parties. Docket Entry No. 26. Although the court issued an instruction not to file any more motions, more followed which were identical to those previously denied. Although they were again nominally submitted by other prisoners, the court is not convinced that the plaintiff was not behind the filings. Moreover, the court has had an opportunity to review the alleged facts. As stated above, the court found that all but one of Wren's claims are frivolous. The remaining claim only establishes that Wren has been denied access to

religious services and that he is currently assigned to the Stevenson Unit. Most of the motions were sent by inmates from other units, and the motions do not demonstrate that the other parties were similarly denied. Therefore, the court will deny the motions for joinder. *Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984).

Wren has also filed a Motion for a Temporary Restraining Order (Docket Entry No. 28) in which he alleges that he has been subjected to retaliation for filing this action. In support of his allegation, Wren has submitted affidavits from another inmate assigned at the Neal Unit located in Amarillo, Texas. The affidavit alludes to misconduct that occurred well before the complaint was filed. The motion will be denied because Wren has failed to show that he is entitled to such relief. *Planned Parenthood of Houston and Southeast Tex. v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005).

Wren has filed a motion (Docket Entry No. 46) seeking permission to file motions adding TDCJ as a defendant and for this court to assume jurisdiction over state law claims in this action. The Eleventh Amendment generally bars suits in federal court by citizens against their state agencies. *Pennhurst State School & Hosp. v. Halderman*, 104 S.Ct. 900, 908 (1984); *Hirtz v. Texas*, 974 F.2d 663, 665 (5th Cir.1992). Moreover, neither a state nor its agencies are "persons" under § 1983. *Will v. Michigan Dept. of State Police*, 109 S.Ct. 2304, 2312 (1989). Under the provisions of 28 U.S.C. § 1367, the court shall have supplemental jurisdiction over such claims that are so related to the claims within the court's original jurisdiction such that they are part of the same case or controversy. Wren's motion shall be granted in part and denied in part.

## IV. Conclusion

The court **ORDERS** the following:

1. All Motions for Joinder (Docket Entry Nos. 27, 29, 30, 31, 32, 33, 34, 35, 36, 37, 39, 40, 41, 42, 43, 45, 47, 48, 49 and 52) are **DENIED**.

2. The Motion for Temporary Restraining Order (Docket Entry No. 28) is **DENIED**.

3. The Motion for Permission to Addition Additional Parties and Claims (Docket Entry No. 46) is **GRANTED** in part and **DENIED** in part.

4. Wren's claims regarding the right of equal access, the right not to cut his hair, and the right to possess religious items at all times are **DISMISSED** as frivolous. 28 U.S.C. § 1915(e).

5. Wren's claim that he has been denied an opportunity to participate in religious ceremonies is **RETAINED** and the defendants will be **ORDERED** to answer the allegations in a separate Order.

**SIGNED** on this 20th day of September, 2005.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE