IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| MARK RAVENSHADOW WREN, § | | |
| TDCJ-CID # 927238, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO. V-04-076 | |
| § | | |
| GARY JOHNSON, et al., § | | |
| § | | |
| Defendants. § | | |

**MEMORANDUM OPINION AND ORDER**

Texas prison inmate Mark Wren filed a civil rights complaint alleging that officials of the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID) violated his right to practice his religion. The defendants have filed a motion for summary judgment (Docket Entry No. 86) supported by records and sworn statements. Wren has not filed a response addressing the arguments raised in the defendants' motion. After reviewing the pleadings and evidence, the court will grant the motion and dismiss this action for the reasons set forth below.

**I. Procedural History and Wren's Allegations**

Wren alleges that he practices the Native American religion, a belief system shared by a relatively small number of other TDCJ-CID inmates. His pleadings assert claims under the First Amendment, the Fourteenth Amendment, and the Religious Land Use and Institutionalized Persons Act (RLUIPA) in which he alleged that he was denied the right to adhere to the tenets of his faith while he was assigned to the TDCJ-CID Stevenson Unit. After reviewing the complaint and a court ordered More Definite Statement (Docket Entry No. 38), the court issued a Memorandum Opinion

and Order (Docket Entry No. 53) dismissing as frivolous Wren's claims regarding the right of equal access, the right to refuse to cut his hair, and the right to possess religious items. The court retained Wren's claims that he was denied an opportunity to participate in religious ceremonies and ordered the defendants to answer those allegations which pertained to the remaining claim.

With regard to his remaining claim that he was denied an opportunity to practice his religion, Wren asserts that Native American practices of engaging in sweat lodge and pipe ceremonies are essential tenets of his religion. However, Wren alleges that TDCJ-CID has denied him an opportunity to participate in these ceremonies despite their religious significance. Wren asserts that the Stevenson Unit has been designated as a unit to serve the special needs of prisoners who have been identified as adherents of the Native American faith. Wren seeks an injunctive order mandating the provision of a purification ceremony.

## II. Summary Judgment Standards

In deciding a motion for summary judgment, the Court must determine whether the pleadings and records indicate if there is a genuine issue regarding any material fact and whether the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2552 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue. *Kee v. City of Rowlett, Tex.*, 247 F.3d 206, 210 (5th Cir. 2001). To meet this burden, the movant must present evidence that shows that the nonmovant cannot carry its burden of proof at trial. *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998). The movant may accomplish this by showing that the non-moving party has presented no evidence in support of his claim. *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Once the

movant has met this burden, the non-movant must present specific facts showing that there is a genuine issue for trial; otherwise, summary judgment will be entered in favor of the movant. *Id.*

The court construes the evidence such that the nonmoving party is favored and does not weigh the evidence, assess its probative value, or resolve any factual disputes. *Williams v. Time Warner Operation, Inc*., 98 F.3d 179, 181 (5th Cir. 1996). However, the nonmovant cannot rely on "conclusory allegations" or "unsubstantiated assertions" to establish that there is a triable issue. *Wallace v. Texas Tech University*, 80 F.3d 1042, 1047 (5th Cir. 1996). Nor is the nonmovant's burden satisfied by casting "some metaphysical doubt as to material facts" or where "only a scintilla of evidence" has been brought forth. *Fiesel v. Cherry*, 294 F.3d 664, 667 (5th Cir. 2002); *Spectators' Communication Network Inc. v. Colonial Country Club*, 253 F.3d 215, 219 (5th Cir. 2001). Factual controversies will be decided in the nonmovant's favor only when both sides have presented evidence showing that there is an actual controversy. *Burns v. Harris County Bail Bond Bd.*, 139 F.3d 513, 518 (5th Cir. 1998), *citing Little*, 37 F.3d. at 1075. In the absence of any proof, the court will not assume that the nonmovant could or would prove the necessary facts. *Id*.

### III. The Defendants' Arguments and Evidence

The defendants first show that Wren has been voluntarily transferred from the Stevenson Unit and that he has indicated that he is no longer experiencing difficulties observing his religion. Consequently, they contend that his request for injunctive relief is now moot. In addition, the defendants contend that they have not violated Wren's right, pursuant to the Constitution and the RLUIPA, to practice his Native American religion. They do not dispute that the ceremonies at issue are a fundamental part of Wren's religion. However, they argue that the ceremonies could not be conducted either due to security problems or lack of qualified personnel. They also assert that there

are weekly meetings in which inmates could discuss their religious heritage and that Native American inmates were allowed to possess certain devotional items and pray in their cells. The defendants present the following evidence (attached to Docket Entry No. 86) in support of their arguments:

| | |
|---|---|
| Exhibit A | Affidavit of David D. Worcester, Stevenson Unit Chaplain |
| Exhibit B | Affidavit of TDCJ-CID Chaplaincy Director Billy Pierce |
| Exhibit C | Affidavit of TDCJ-CID Director Nathaniel Quarterman |
| Exhibit D | Letter from Mark Ravenshadow Wren to Defendants' Counsel (indicating Wren's willingness to forgo the religious ceremonies at issue) |
| Exhibit E | Affidavit of Tracie Pawelek |
| Exhibit F | Relevant Records of TDCJ-CID's Chaplaincy Department |
| Exhibit G | Relevant Grievance Records |

The evidence establishes that Wren is no longer assigned to the Stevenson Unit and is currently assigned to the TDCJ-CID Wallace Unit in order to be closer to his mother (Exhibit E) and that Wren has stated (Exhibit D) he is willing to practice his religion "in cell" in order to remain at the Wallace Unit. In doing so, Wren acknowledges that the Wallace Unit is not designated to accommodate the special religious needs of Native American adherents, but he prefers to remain there in order to be near his mother who is in poor health. *Id*.

The evidence further establishes that TDCJ-CID provides constitutionally adequate religious opportunities to inmates including those inmates who observe Native American beliefs. *See* Exhibits A, B, and C. However, the prison system restricts religious practices which interfere with the system's legitimate penological interests. *Id*. TDCJ-CID does allow all offenders to observe their religious practices in their cells using appropriate materials and items. Exhibit B, at 3.

Religious meetings are also accommodated; however, they must be monitored by security personnel, employees or qualified volunteers. Exhibit C, at 4. This is necessary because prisoners can use such meetings "to organize gangs, pass information, make plans, and engage in illegal activities." *Id*. *See also Adkins v. Kaspar*, 393 F.3d 559, 567-71 (5th Cir. 2004).

The defendants have identified two problems in accommodating Native American inmate ceremonies. First, there is lack of approved outside volunteers willing and able to conduct the ceremonies at the prison units. Exhibit A, at 3. Consequently, the Stevenson Unit has been unable to meet its goal of providing twice-monthly pipe ceremonies. *Id*. Eventually, TDCJ-CID found a contract chaplain, Mark Johnson, who began conducting pipe ceremonies in September, 2005. *Id*. In the meantime, inmates were allowed to attend weekly meetings where they had the opportunity to discuss their religious heritage. *Id*.

The second problem facing prison officials is the practical difficulties posed by the pipe and sweat lodge ceremonies. Participants at a pipe ceremony sit in a circle and pass around a pipe which contains burning tobacco, sage, sweet grass cedar or kinnikinnick.[1] Exhibit C, at 4. The smoke is supposed to convey the participants' prayers to the greater being. *Id.* Tobacco has been banned from TDCJ-CID Units. *Id.* Consequently, allowing Native American inmates to use contraband is a special privilege which might spawn resentment among other inmates[2] and the pipe ceremonies must be carefully monitored. Moreover, there has been an increase of prisoners who have claimed that they are adherents of the Native American religion, and the TDCJ-CID has had to respond by designating certain units where inmates may be served by the TDCJ-CID's limited chaplaincy

---

[1] Kinnikinnick is a mixture of tobacco and bearberry.

[2] Catholic prisoners may not use wine at communion. Exhibit C, at 4.

5

resources. *Id*. Stevenson is one of the units where prisoners may request to be transferred in order to practice their religion, including participation in pipe ceremonies. *Id*.

Sweat lodge ceremonies pose an even greater challenge for prison officials. *Id*. at 5. Participants in a sweat lodge ceremony strip down and go into a small wigwam structure which is heated and steamed by a fire and hot rocks. First, a sweat lodge is an enclosed structure which is supposed to be 'sacred' and cannot be entered or touched by those who are not adherents. *Id*. Second, the structure and function of the sweat lodge pose serious problems regarding prison security. A sweat lodge is constructed from willow poles which can be easily fashioned into weapons. *Id*. at 5-6. Moreover, guards would be unable to observe what was occurring inside the structure. *Id*. at 6-7. Placing a guard inside would not solve the problem; instead, the guard would be vulnerable to assault. *Id*. The ceremony itself involves a fire and hot rocks which are used to generate steam; all of these are obvious potential weapons against guards and other inmates. *Id*. at 6. The heat and steam created would obstruct a guard's vision and possibly pose a health risk for those inside. *Id*. at 7.

In summary, a sweat lodge presents numerous security and health problems which cannot be remedied in any practical way. A pipe ceremony can be provided, but there are logistical problems which may occur from time to time which may make it temporarily unfeasible. In light of the problems facing them, the defendants and other TDCJ-CID officials have accommodated the needs of Native American practitioners. Moreover, Wren has transferred to another unit and has expressed his willingness to practice his religion in his cell.

### IV. Analysis

A. Wren's Voluntary Transfer Moots Claims

The defendants have shown that Wren has been transferred from the Stevenson Unit to another unit which is not designated for Native American adherents at his request for reasons unrelated to this suit. Wren asserts in his complaint that he only seeks injunctive relief.

In many instances, an inmate's transfer from a prison or jail moots his request for injunctive relief. *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002); *Herman v. Holliday*, 238 F.3d 660 (5th Cir. 2001). While mindful of the fact that Wren remains within the TDCJ-CID system, the court notes that his transfer to another unit is voluntary and that the unit has not been designated to handle inmates who practice the Native American religion. Wren's letter (Docket Entry No. 86, Exhibit D) clearly demonstrates that he is more concerned with being near his mother regardless of his ability to engage in communal religious services. In light of this uncontroverted evidence, Wren's claim is subject to dismissal as there is no indication that he would suffer any continuing harm. *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998); *Biliski v. Harboth*, 55 F.3d 160, 162 (5th Cir. 1995).

B. No Showing of Violation

Apart from showing that Wren's transfer has mooted his claims for injunctive relief, the defendants have demonstrated that there has been no showing of a violation of his rights under constitutional or federal law. Under the First Amendment, prisoners have a right to reasonable opportunities to practice their religious beliefs. *Cruz v. Beto*, 92 S.Ct. 1079, 1081 n.2 (1972). However, this right may be limited by the prison authorities in furtherance of legitimate and necessary penological goals. *Turner v. Safley*, 107 S.Ct. 2254, 2261-62 (1987); *O'Lone v. Estate of Shabazz*, 107 S.Ct. 2400, 2405 (1987). A prison official's duty to accommodate inmates' religious

beliefs is curbed by any legitimate penological interest which prevents such accommodation. *See e.g. Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1992) (rejecting inmate's challenge to TDCJ-CID's prohibition on long hair by finding that it was rationally related to the legitimate state objectives of maintaining security and facilitating inmate identification); *Matthews v. Morales*, 23 F.3d 118 (5th Cir. 1994) (denial of religion related name change was based on legitimate identity concern and did not violate inmate's free exercise right); *Chriceol v. Phillips*, 169 F.3d 313, 315 (5th Cir. 1999) (prison officials could withhold mail from religious organizations which advocated racial violence and other illegal activities).

Under RLUIPA, the court must determine whether TDCJ-CID officials have imposed a "substantial burden" on Wren's religious practices and whether the officials have used the "least restrictive means" to impose this burden in order to meet a "compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1)-(2). In doing so, the court accords "due deference to prison administrator's experience and expertise. *Cutter v. Wilkinson*, 125 S.Ct. 2113, 2119 (2005). In reviewing the evidence, the court considers:

> (1) whether a "valid, rational connection [exists] between the prison regulation and the legitimate governmental interest put forward to justify it," (2) whether there exist "alternative means of exercising the fundamental right that remain open to prison inmates," (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and (4) whether there is an "absence of ready alternatives" to the regulation in question.

*Adkins v. Kaspar*, 393 F.3d 559, 564 (5th Cir. 2004), *citing Turner v. Safley*, 107 S.Ct. 2254, 2262 (1987).

In the present action, this court must consider the TDCJ-CID's limited staff and resources, in addition to its security concerns, when addressing Wren's demands. *Freeman v. Texas Dept. of Criminal Justice*, 369 F.3d 854, 861 (5th Cir. 2004). The small number of Native American

8

adherents must be factored into the analysis because TDCJ-CID cannot be expected to provide the same resources to all religious groups regardless of size. *Adkins* 393 F.3d at 566.

The Fifth Circuit has upheld the validity of TDCJ-CID's requirement that all religious gatherings be led by an outside volunteer. *Id*. at 571. The record in this action demonstrates that TDCJ-CID faces challenges in finding qualified practitioners to lead Native American pipe services, but the services were held whenever a volunteer or contract chaplain was available to conduct them. When the rituals could not be held due to circumstances beyond the defendants' control, Wren and other members of his faith were still allowed to meet on an informal basis. Moreover, Wren was able to practice his religion in his cell regardless of the availability of a chaplain. Wren's correspondence indicates that this currently meets his religious needs.

The evidence further shows that Wren's request for a sweat lodge is unworkable in a prison setting. The Supreme Court has held that an inmate's excessive requests for accommodation of his religious practices can be rejected if such provisions would impose an unjustified burden on or jeopardize the operation of the prison. *Cutter*, at 2125. In light of the proven demands, as well as the potential dangers, of a sweat lodge the defendants were clearly justified in refusing to provide one. *See Hamilton v. Schriro*, 74 F.3d 1545, 1551 (8th Cir. 1996).

The evidence proves that the defendants have not placed a burden on Wren's religious practices and that they have used the least restrictive means to achieve their goals of maintaining a safe and secure prison. *See Adkins*. Therefore, the uncontroverted evidence demonstrates that Wren has no cause of action regarding his right to practice his religion in prison and that the defendants are entitled to summary judgment under FED. R. CIV. P. 56.

## V. Other Motions

Wren has filed a motion (Docket Entry No. 78) in which he seeks to reinstate his claim regarding long hair. He asserts that this court's order dismissing that claim relied on § 1983 cases and that his claim was brought under RLUIPA. He argues that it must be shown that the defendants were using the least restrictive means in burdening his religious practices by requiring him to cut his hair pursuant to prison regulations. The court's Memorandum Opinion and Order explicitly acknowledged that Wren presented claims under RLUIPA. Docket Entry No. 53, at 2. The court also confirmed that Wren objected to any TDCJ-CID regulation which required him to cut his hair regardless of length. *Id*. at 3. The court further determined that while the TDCJ-CID's grooming standards burdened Wren's religious practices, the prison had a compelling interest in enforcing that standard and that those interests could not be met without regulating the prisoners' hair length. *Id*. at 5.

Under RLUIPA, the courts must permit the prison officials to maintain order within their institutions, and deference must be paid to decisions regarding security problems posed by hair length. *Hoevenaar v. Lazaroff*, 422 F.3d 366, 370-71 (6th Cir. 2005). Consequently, Wren cannot successfully pursue a blanket challenge to all TDCJ-CID rules regarding hair length under RLUIPA. *Id*. *See also Green v. Polunsky*, 229 F.3d 486 (5th Cir. 2000). The motion (Docket Entry No. 78) will be **DENIED**.

Wren has also filed a motion to for this court to assume supplemental jurisdiction over state law claims. Docket Entry No. 76. Wren specifically complains that he and other male adherents of the Native American religion are required to cut their hair while female inmates are allowed to maintain longer hair. He contends that this practice is discriminatory in violation of Chapter 106 of the Texas Civil Practice and Remedies Code. That statute does not authorize relief for TDCJ-

CID inmates. TEX. CIV. PRAC. & REM. CODE 106.004 ("This chapter does not authorize a claim for preventive relief against the Texas Department of Criminal Justice, an employee of the department, or any other agency, agent, employee, or officer of this state if: (1) the claim is brought by a person housed in a facility operated by or under contract with the department; and (2) the claim accrued while the person was housed in the facility."). Moreover, no state claim will be considered because all federal claims have been dismissed. *Flores v. County of Hardeman, Tex.*, 124 F.3d 736, 739 (5th Cir. 1997). The motion (Docket Entry No. 76) will be **DENIED**.

Wren has apparently sought help from numerous other Native American inmates from other units because this court has been inundated with motions for joinder. *See* Docket Entry No. 53, at 8. Wren had also sought class certification. *See* Docket Entry No. 26. The court previously denied the motions because there was no indication that the other parties were indispensable to this action and it appeared that the parties were attempting to avoid the filing fee requirement under the Prison Litigation Reform Act. *Id*. The court will **DENY** the subsequent motions for the same reasons and because all claims have been dismissed. *See also Green*, 229 F.3d at 489. Two of the prisoners filed Applications to Proceed In Forma Pauperis (Docket Entry Nos. 65 and 68) which will be **DENIED** as moot.

Wren has filed a motion (Docket Entry No. 71) in which he seeks court appointed counsel. In general, there is no right to a court appointed attorney in § 1983 cases. *Jackson v. Cain*, 864 F.2d 1235, 1242 (5th Cir. 1989); *Ulmer v. Chancellor*, 691 F.2d 209, 212 (5th Cir. 1982). Wren has been allowed to present his best case regarding his claim that he is entitled to injunctive relief regarding his right to practice his religion. His pleadings were liberally construed and the defendants were ordered to respond to what was determined to be the remaining legally nonfrivolous claim. The issues are relatively simple, and Wren had the opportunity to challenge the evidence and

arguments presented in the defendants' straightforward motion for summary judgment. Therefore the motion will be **DENIED**. *See Wendell v. Asher*, 162 F.3d 887, 892 (5th Cir. 1998).

Wren's motion for a jury trial (Docket Entry No. 75) will be **DENIED** as moot.

### VI. Conclusion

The court **ORDERS** the following

1. Wren's motions (Docket Entry Nos. 71, 75, 76, and 78) are **DENIED**.

2. The Motions for Joinder and related Applications to Proceed In Forma Pauperis (Docket Entry Nos. 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 67, 68, 69, 73, 74, 77, 79, 80, 82, 83, 85, 88, 89, 90, 91, 92, and 93) are **DENIED**.

3. The defendants' Motion for Extension of Time (Docket Entry No. 84) is **GRANTED**.

4. The defendants' Motion for Summary Judgment (Docket Entry No. 86) is **GRANTED**.

5. This action is **DISMISSED** with prejudice. FED. R. CIV. P. 56(c).

**SIGNED** on this 26th day of July, 2006.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE